**PRIVILEGED AND
CONFIDENTIAL
ATTORNEY WORK PRODUCT
DRAFT OF 4/18/2008**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

The United States of America

*ex rel.*

Kevin Grupp and Robert Moll,

                  Plaintiffs,

      v.                                    Civ. No.: _____

DHL Express (USA), Inc.,
DHL Worldwide Express, Inc., and
DHL Holdings (USA), Inc.

                  Defendants.

_____

## COMPLAINT

        Plaintiff, the United States of America, *ex rel.* Kevin Grupp and Robert Moll,

alleges as its Complaint against defendants as follows:

### Introduction

        1.      This is an action to recover damages, treble damages, and penalties on

behalf of the United States of America on account of false and fraudulent claims made or caused

to be made by defendants, their agents, employees, and co-conspirators, in violation of the

Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended (the "Act").  These

violations involved the intentional submission of false claims to the United States of America,

including several of its agencies or departments (including the Departments of Defense and

Homeland Security), for the purpose of getting payments in excess of those to which defendants

were lawfully entitled for package delivery charges, namely, by including improper fuel surcharges.

2.      Defendants DHL Express (USA), Inc., DHL Worldwide Express, Inc., and DHL Holdings (USA), Inc. (collectively "DHL"), and their employees, agents, and co-conspirators on their behalf, submitted to the United States of America claims for delivery services that falsely and fraudulently:  (a) misrepresented that *air express* packages were delivered by air when, in fact, they were delivered solely by ground transportation; (b) imposed jet fuel surcharges for packages that were delivered solely by ground transportation; and (c) imposed diesel fuel surcharges on ground delivery shipments when, in fact, only a small portion of those surcharge amounts was passed along to DHL's independent contractor network of trucking companies who bought the relevant fuel.  As a result of these knowingly false and fraudulent claims, DHL received payments from the United States of America that were inflated, excessive, and unearned.

3.      The Act provides that any person who knowingly submits or causes to be submitted, or conspires to submit, a false or fraudulent claim to the United States of America for payment or approval is liable for a civil penalty of between $5,500 and $11,000 for each false or fraudulent claim submitted or paid, plus three times the amount of damages sustained by the United States of America from the payment of such fraudulent claims.  The Act's *Qui Tam* provisions further allow any person having information regarding a false or fraudulent claim against the United States of America to bring an action for himself (as the "relator") and for the United States of America, and to share in any recovery.

4.      Based on these provisions of the Act, Kevin Grupp and Robert Moll, as plaintiffs/relators, seek to recover damages, treble damages, and civil penalties arising from false claims made to the United States of America that were knowingly presented or caused to be presented to, and were paid by, the United States of America as a result of the acts of DHL and its agents, employees, and co-conspirators.

## Parties

5.      Plaintiff/relator, Kevin Grupp, is and was, at all times relevant to this Complaint, a resident of Clarence Center, New York and the County of Erie, within the Western District of New York.  Kevin Grupp has personal knowledge of the facts alleged in this Complaint and is acquainted with DHL and its business practices.

6.      Plaintiff/relator, Robert Moll, is and was, at all times relevant to this Complaint, a resident of Orchard Park, New York and the County of Erie, within the Western District of New York.  Robert Moll has personal knowledge of the facts alleged in this Complaint and is acquainted with DHL and its business practices.

7.      Kevin Grupp and Robert Moll own and operate MVP Delivery and Logistics, Inc. ("MVP") – a trucking company located in Depew, New York that serves as an independent contractor to DHL.

8.      Grupp and Moll bring this action for violations of 31 U.S.C. sections 3729 *et seq.* on behalf of themselves and the United States of America pursuant to 31 U.S.C. section 3730(b)(1).  The allegations of this action are based upon the personal knowledge of Grupp and Moll unless otherwise described as made upon information and belief.

9.      Grupp and Moll are original sources of the factual allegations of this Complaint within the meaning of 31 U.S.C. section 3730(e)(4)(B) of the Act.

10.     Upon information and belief, defendant DHL Express (USA), Inc. is a corporation organized and existing under the laws of the State of Ohio with a principal office for the transaction of business located at 1200 South Pine Island Road, Plantation, Florida 33324.

11.     Upon information and belief, defendant DHL Worldwide Express, Inc. is a corporation organized and existing under the laws of the State of Ohio with a principal office for the transaction of business located at 1200 South Pine Island Road, Plantation, Florida 33324.

12.     Upon information and belief, defendant DHL Holdings (USA), Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal office for the transaction of business located at 1200 South Pine Island Road, Plantation, Florida 33324.

13.     The DHL defendants are subsidiaries of Duetsche Post World Net.

## Jurisdiction and Venue

14.     DHL is doing business in this District and elsewhere in New York and is subject to this Court's jurisdiction.

15.     Upon information and belief, DHL is authorized to do business in New York.

16.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. section 1331 and 31 U.S.C. section 3732, both of which specifically confer jurisdiction on this Court for actions under the Act ( *i.e.,* under 31 U.S.C. sections 3729 and 3730).

17.     Venue is proper in this jurisdiction under 31 U.S.C. section 3732(a) because any one or all of the defendants can be found and/or transact business within the Western District of New York, and because violations of 31 U.S.C. sections 3729 and 3730 alleged in the Complaint occurred within this judicial district.  Venue is also proper pursuant to 28 U.S.C. sections 1391(b) and (c).

## Allegations of Fact

18.     At all relevant times, DHL was and is in the business of picking up and delivering items and packages for a fee.

19.     DHL does not use DHL-owned trucks or DHL employees to conduct about 65%-70% of the ground transportation of DHL packages.  Instead, DHL uses a network of independent contractors who are required to use the DHL logo and are authorized to handle its packages.

20.     MVP, the corporation owned by Grupp and Moll, is such an independent contractor to DHL, providing package pick-up and delivery services in the Buffalo area.

21.     The relationship among DHL, MVP, Grupp, and Moll is such that MVP, Grupp, and Moll qualify for the anti-retaliation protections of the Act, in addition to any common law or other remedies against retaliation by DHL.

22.     DHL, by agreements and with the approval of the United States of America, has been and/or is authorized, upon request, to pick up and deliver items for the United States of America, including deliveries for the benefit of the Departments of Defense, Homeland Security, and other departments and agencies.

23.     Over the last several years, DHL, under the terms of its agreements and contracts with Departments and agencies of the United States of America, picked up and delivered certain items under various terms and conditions expressly and particularly specified by the United States of America including, but not limited to, the places of pick up and delivery; the method or mode of transportation (*e.g.,* by air or ground); and the time and date by which the items were to be delivered to their destination.

24.     Beginning in or about 2003 or 2004, DHL engaged in a practice whereby DHL misrepresented that all *air express* packages would travel by air when, in fact, many of them were actually transported solely via DHL's truck hubs, or otherwise, using *ground transportation*.  This practice is ongoing.

25.     Beginning in or about 2003 or 2004, after citing rising jet fuel costs, DHL represented the need for and began charging a jet fuel surcharge for *air express* deliveries irrespective of whether the delivered items were ever transported by air.  This practice is ongoing.

26.     DHL's jet fuel surcharge is currently 22%.

27.     In some instances, the particular contract between DHL and the United States caps DHL's jet fuel surcharge at 7% for certain packages.

28.     Beginning in or about 2003 or 2004, with respect to its *air express* service, DHL computed its jet fuel surcharge, added it to the bills, and then charged it to, and was paid by, the United States of America.  This practice is ongoing.

29.     A substantial percentage of DHL *air express* deliveries paid for by the United States government <u>did not travel by air at all</u> even though they included a jet fuel surcharge.  Instead, they were transported via DHL's truck hubs, or otherwise, using ground transportation.  In these cases, the packages never flew by air through DHL's sole air hub – in Wilmington, Ohio.  This practice is ongoing.

30.     Over the last several years, many thousands of packages have been transported this way for DHL's customers, both governmental and non-governmental.

31.     In 2004, DHL began adding to and expanding its network of regional truck (ground) hubs across the United States.  In this way, DHL expanded its ability to transport shorter-distance packages, including *air express* packages, solely by ground, without the need for air trips through DHL's Wilmington, Ohio air hub.

32.     To exemplify DHL's practices:  a package sent *air express* from Buffalo to Cleveland <u>will not travel by air</u>; instead, it will travel by truck from Buffalo to DHL's Erie, Pennsylvania truck hub and, from there, by truck to Cleveland.  Similarly, a package sent *air*

*express* from Washington, D.C. to Lorton, Virginia <u>will not travel by air</u>; instead, it will travel by truck from Washington to DHL's Allentown, Pennsylvania truck hub and, from there, by truck to Virginia.  DHL charges its air fuel surcharge in these situations.

33.     Beginning in or about 2003 or 2004, after citing rising fuel costs, DHL represented the need for and began charging a diesel fuel surcharge for non-air-express service notwithstanding the fact that, for 65-70% of pickups and deliveries, DHL's independent contractors (like MVP) incurred the majority of fuel costs associated with DHL's *ground transportation* service.

34.     In this way, DHL was able to extract diesel fuel surcharges from the United States and other customers under false pretenses.

35.     DHL's diesel fuel surcharge for ground service is currently 6.3%.

36.     Beginning in or about 2003 or 2004, DHL computed its diesel fuel surcharge, added it to the bill, and then charged it to, and was paid by, the United States of America.  This practice is ongoing.

37.     DHL has shared, and presently shares, only a small portion of fuel surcharges with its independent contractors.

38.     The United States of America, including the Departments of Defense, Homeland Security, and other departments and agencies, has paid and pays DHL for air transport when ground transport is used, has paid and pays DHL jet fuel surcharges when no jet fuel is

consumed, and has paid and pays DHL diesel fuel surcharges when DHL is not buying all of the diesel fuel.

39.     The fuel surcharge practices described in this complaint constitute "claims" for payment submitted under the Act and, in particular, under 31 U.S.C. 3729(c).

40.     Under the terms of its agreements and contracts with DHL, the United States of America, including the Departments of Defense, Homeland Security, and other departments and agencies, paid DHL monies demanded through DHL's presentment of claims that contained jet fuel surcharges and diesel fuel surcharges.

41.     During the years at issue in this complaint, DHL and its employees, agents, and co-conspirators, knowingly presented or caused to be presented false and fraudulent claims to the United States of America, including the Departments of Defense, Homeland Security, and other departments and agencies, through the submission of requests for payment for deliveries that included jet fuel surcharges and diesel fuel surcharges.

42.     During the years at issue in this complaint, DHL and its employees, agents, and co-conspirators, knowingly made false records that directly resulted in improper and/or inflated payments being made by the United States of America for delivery services containing fuel surcharges.

43.     During the years at issue in this complaint, DHL and its employees conspired and agreed among themselves and with others, both known and unknown, to create and submit for payment to the United States of America, including the Departments of Defense,

Homeland Security, and other departments and agencies, false and fraudulent claims for payment with knowledge and intent to defraud the United States of America and, during the relevant period, performed acts in furtherance of such conspiracy that ultimately resulted in the United States of America overpaying DHL for delivery services.

44.     In particular, DHL submitted to the United States of America, including the Departments of Defense, Homeland Security, and other departments and agencies, claims for payment for delivery services that falsely and fraudulently represented:  (a) that shipment was by air, (b) that jet fuel surcharges were properly incurred, and (c) that diesel fuel surcharges were needed to compensate DHL, when, in fact, DHL together with its agents, employees, and co-conspirators knew that these representations were untrue.

45.     In connection with the submission of such false and fraudulent claims, DHL, together with its agents, employees, and co-conspirators, created false delivery invoices to support its fraudulent claims to the United States of America.

46.     As a result, DHL obtained payment for amounts set forth in the false and fraudulent claims submitted by DHL when such payments were in excess of what DHL would have been entitled to receive if the mode of transportation and the justifications for, and applicability of, fuel surcharges were accurately and truthfully represented.

47.     Upon information and belief, some of the conduct at issue in this complaint was done by Airborne Express, Inc., which was bought and then merged into DHL in 2003 or 2004.  DHL, as the successor corporation, remains liable for this conduct.

## Count I

### Substantive Violations of the False Claims Act
### [31 U.S.C. §§ 3729(a)(1) and (a)(2)]

48.     Grupp and Moll repeat and reallege each allegation of numbered paragraphs 1 **through __ of** this Complaint as part of this First Cause of Action.

49.     DHL, together with its agents, employees, and co-conspirators, presented and caused to be presented to the United States of America, including the Departments of Defense, Homeland Security, and other departments and agencies, knowingly false and fraudulent claims for payment for delivery services and, as well, knowingly created and made false records in connection with such fraudulent and false submissions.

50.     As a result of the knowingly false and fraudulent claims submitted by DHL, together with its agents, employees, and co-conspirators, the United States of America, including the Departments of Defense, Homeland Security, and other departments and agencies, paid for air delivery when ground transportation was used, paid jet fuel surcharges where no air transportation was used, and paid diesel fuel surcharges when DHL was not purchasing or reimbursing the increased cost of all or most of the fuel used in its ground transport operations.

51.     As a result of DHL's knowing conduct and fraudulent charging of the United States of America for delivery services that were not performed in the manner required or agreed to, the United States of America has overpaid or erroneously paid DHL substantial amounts of money, which total, at this time, is unknown but which can be expected to exceed several millions of dollars over the period relevant to this Complaint.

52.     As a result of the knowingly fraudulent conduct of DHL together with that of its respective agents, employees, and co-conspirators, DHL is liable to the United States of America for the amount of the overpayments made to it, trebled, plus penalties, interest, and attorneys' fees under the Act.

## Count II

### False Claims and Conspiracy
### [31 U.S.C. § 3729(a)(3)]

53.     Grupp and Moll repeat and reallege each allegation contained in paragraphs 1 **through __ of** this Complaint as part of this Second Cause of Action.

54.     Beginning no later than 2003 or 2004, and possibly earlier, DHL and its employees knowingly conspired among themselves and with others, including DHL's employees and agents, to defraud the United States of America by causing false and fraudulent claims to be submitted and by knowingly making and submitting claims for payment that falsely charged fuel surcharges; and further, by submitting claims for payment to the United States of America that DHL knew were false because DHL implied that certain items were transported by air when, in fact, such items were entirely transported by trucks or other ground transportation.  In addition, DHL engaged in its scheme to collect improper diesel fuel surcharges.

55.     In furtherance of the conspiracy, DHL entered into contracts for the transportation of items and created other records and documents substantiating such information, knowing that information to be false and untrue, with the intent to defraud the United States of America.

56.     Based upon the false and fraudulent claims submitted by DHL, the United States of America paid DHL in excess of what it was entitled to for the services it provided under the terms of its contracts with the United States of America.

57.     As a result, the United States of America has sustained substantial damages directly related to overpayments made to DHL based upon false and fraudulent claims, and DHL is therefore liable to the United States of America for the amount of such overpayments made to it, trebled, together with penalties, interest, and the costs of this action, including attorneys' fees, as provided for by the Act.

## Jury Demand

58.     Grupp and Moll demand a jury on all issues and matters triable by a jury under this Complaint.

## Relief Requested

WHEREFORE, the United States of America *ex rel.*  Kevin Grupp and Robert Moll demands judgment against DHL as follows:

a)     On the first cause of action, for treble damages under 31 U.S.C. § 3729(a)(1) and (a)(2) in an amount to be determined at trial, plus penalties, costs, interest, and attorneys' fees;

b)     On the second cause of action, for treble damages under 31 U.S.C. § 3729(a)(3) in an amount to be determined at trial, plus penalties, costs, interest, and attorneys' fees;

c)     On the first and second causes of action, for the damages sustained by the United States of America; and

d)     For award of such other and further relief as this Court deems proper as a matter of law or under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.

Dated:       Buffalo, New York
              April 18, 2008

                                      **HODGSON RUSS LLP**
                                      *Attorneys for Kevin Grupp and Robert Moll*

                                      By:    s/Daniel C. Oliverio
                                              Daniel C. Oliverio, Esq.
                                              Joseph V. Sedita, Esq.
                                              John L. Sinatra, Jr., Esq.
                                    140 Pearl Street, Suite 100
                                    Buffalo, New York  14202-4040
                                    Telephone:  (716) 856-4000

- 14 -