UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THE UNITED STATES OF AMERICA *ex rel.*
KEVIN GRUPP and ROBERT MOLL,

                        Plaintiffs,

        -vs-                                      08-CV-301C

DHL EXPRESS (USA), INC.,
DHL WORLDWIDE EXPRESS, INC., and
DPWN HOLDINGS (USA), INC. (f/k/a
DHL HOLDINGS (USA), INC.)

                        Defendants.

---

| | |
|---|---|
| APPEARANCES: | HODGSON RUSS LLP (DANIEL C. OLIVERIO, ESQ., JOHN L. SINATRA, ESQ., and REETUPARNA DUTTA, ESQ., OF COUNSEL), Buffalo, New York, Attorneys for Plaintiffs. |
| | CONNORS & VILARDO, LLP (TERRENCE M. CONNORS, ESQ., and JAMES W. GRABLE, ESQ., OF COUNSEL), Buffalo, New York, Attorneys for Defendants. |

## BACKGROUND

This is a *qui tam* action brought by the plaintiffs on behalf of the United States for alleged violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* Plaintiffs assert that the defendants have violated the FCA by improperly billing the United States for jet fuel surcharges on deliveries that traveled solely by ground transportation. Specifically, plaintiffs allege that the defendants "falsely and fraudulently misrepresented that certain Next Day and 2nd day shipments were delivered by air such that jet fuel surcharges were necessary, when, in fact, they were delivered solely by

ground transportation . . . ." (Item 25, ¶ 2).  Additionally, plaintiffs allege the defendants imposed diesel fuel surcharges on ground delivery shipments when "only a small portion of those surcharge amounts was passed along to DHL's independent contractor network of trucking companies who bought the relevant fuel."  *Id.*, ¶ 3.

The case was originally assigned to Chief United States District Judge William M. Skretny.  In a Notice of Election filed March 24, 2011, the Government declined to intervene in the action (Item 21).  On July 15, 2011, the plaintiffs filed a notice of their intention to proceed with the action in light of the Government's election not to intervene (Item 24).  Thereafter, on November 8, 2011, the defendants filed a motion to dismiss (Item 36).  Plaintiffs filed a response to the motion on December 2, 2011 (Item 42), and defendants filed a reply on January 9, 2012 (Item 44) and a supplemental declaration on March 9, 2012 (Item 45).  The case was transferred to the docket of the undersigned on March 16, 2012 (Item 47).  On June 5, 2012, the defendants filed an additional supplemental declaration (Item 48).  The court has determined that oral argument is unnecessary.  For the reasons that follow, the defendants' motion to dismiss is granted.

**FACTS**

According to the amended complaint (Item 25, ¶ 20), defendants, collectively referred to as "DHL," are a shipping company that transports packages for a fee.  DHL provided delivery services to the United States government, through the General Services Administration ("GSA"), the Department of Homeland Security, and the Department of Defense.  *Id.*, ¶ 25.  At all times relevant to the complaint, plaintiffs were

the owners and operators of MVP Delivery and Logistics, Inc., ("MVP"), a trucking company located in Depew, New York, and an independent contractor to DHL.  *Id.*, ¶ 9. Plaintiffs allege that, beginning in or about 2003 or 2004, DHL began to assess a jet fuel surcharge on its "Next Day" and "2nd Day" delivery service, regardless of whether the package traveled by air or ground.  *Id.,* ¶ 29.  Plaintiffs further allege that a "substantial percentage of DHL Next Day and 2d Day shipments paid for by the United States government *did not* travel by air at all, even though they included a jet fuel surcharge."  *Id.,* ¶ 32.  Additionally, beginning in 2003 or 2004, DHL began charging a diesel fuel surcharge notwithstanding the fact that it contracted out 65% to 70% of its Ground delivery service.  *Id.,* ¶ 40.  Plaintiffs allege that DHL "shared only a small portion of fuel surcharges with its independent contractors."  *Id.,* ¶ 42.   At all times relevant to the complaint, the jet fuel surcharge has been substantially higher than the ground fuel surcharge (Item 25, ¶ 38).

   Plaintiffs offered three specific examples of the alleged improper jet fuel surcharges.  Waybill #61662929845 represents a March 2008 Next Day shipment from Washington, D.C. to Lorton, Virginia which traveled solely by ground transportation through DHL's truck hub in Allentown, Pennsylvania.  Waybill #75371715440 represents a March 2008 Next Day shipment from Buffalo, New York to Cleveland, Ohio which traveled by ground transportation through DHL's truck hub in Erie, Pennsylvania.  Waybill #65415662141 represents a February 2008 Next Day shipment from Alameda, California to Walnut Creek, California which traveled solely by ground transportation through DHL's truck hub in Fresno, California.  Plaintiffs allege that in

each of these instances, the government was improperly assessed a jet fuel surcharge (Item 25, ¶ 36).

In support of their motion to dismiss, defendants submitted DHL's 2008 "Standard Rate Guide" (Item 36, Exh. B), a copy of DHL's Ground Delivery Service Waybill (Item 36, Exh. C), DHL's 2008 Fuel Surcharge Tables (Item 36, Exh. D), and a copy of DHL's Next Day and 2nd Day Delivery Waybill (Item 36, Exh. E).

DHL's 2008 Rate Guide provides information regarding DHL's various shipping services (Item 36, Exh. B). On Page 2 of the Rate Guide, "U.S. Domestic Shipping" services are noted to include DHL Same Day, DHL Next Day: 10:30, 12:00 PM and 3:00 PM, DHL 2nd Day, DHL Ground, DHL Shipready, and DHL Smartmail. Each of the "Domestic Services" are further described on Page 4 of the Rate Guide. For example, "DHL Next Day 10:30 AM" is described as providing "[g]uaranteed delivery by 10:30 a.m. the next business day." "DHL Ground" provides "[d]oor-to-door delivery throughout the U.S. . . . in 1-6 business days." This method of shipment is said to offer "increased savings without decreased service features. We guarantee your packages receive the same attention and careful handling that you value with our Air Express services, including tracking and delivery details."

The Rate Table for DHL Ground delivery service on page 14 of the Rate Guide contains a description of DHL Ground service and a guarantee "that your packages receive the same attention and careful handling that you value with our express services, including tracking and delivery details." On Page 35 of the Rate Guide, entitled "FEES," DHL advises its customers that "Air Express shipments are assessed a fuel surcharge which is indexed to the USGC kerosene-type jet fuel index. Ground

4

shipments are assessed a fuel surcharge which is indexed to the U.S. Dept. Of Energy's on-highway diesel fuel index." Customers are directed to DHL's "Fuel Surcharge Table" for further details.

On Page 37 of the Rate Guide, DHL domestic shipping services are categorized as either "Same Day," "Time Definite," or "Day Definite." "DHL Ground," a "Day Definite" delivery service, is described as a way to "[s]ave money on your routine shipments with guaranteed door-to-door delivery in 1 to 6 business days, depending on the origin and destination of your shipment."

DHL's fuel surcharge terms are described in a document entitled "DHL Express Fuel Surcharge Information" (Item 36, Exh. D). According to this document, "DHL utilizes an indexed fuel surcharge based upon the fuel prices published monthly by the U.S. Department of Energy." *Id.* The "Air Express and International indexed surcharge calculation is linked to the monthly rounded average of the U.S. Gulf Coast (USGC) price" for kerosene-type jet fuel, while the "Ground Delivery Service indexed surcharge calculation is linked to the monthly rounded average" of the national price for diesel fuel. *Id.* There are two fuel surcharge tables, one for "DHL Air Express Services" and the other for "DHL Ground Delivery Service."

DHL used distinct waybills for "Ground Delivery Service" and for "Next Day" and "2nd Day" shipments. Both waybills provided that DHL reserved the right to transport packages by any means including air, road, or any other carrier (Item 36, Exhs. C, E).

## DISCUSSION

The defendants set forth several grounds for dismissal: 1) plaintiffs' failure to

satisfy a necessary precondition to suit; 2) plaintiffs' failure to plead timely claims; 3) plaintiffs' failure to plead fraud with sufficient particularity; and 4) plaintiffs' failure to state a claim upon which relief can be granted. Because the motion is granted for plaintiffs' failure to satisfy a necessary precondition to suit, the court declines to address the defendants' remaining grounds for dismissal.

1. **Failure to Satisfy a Necessary Precondition**

Chapter 137 of Title 49 of the United States Code governs rates and billing by motor carriers. DHL is a "motor carrier" pursuant to the statute. *See* 49 U.S.C. § 13102(14); *Cerdant, Inc. v. DHL Express (USA), Inc.,* 2010 WL 3397501, *5 (S.D.Ohio August 25, 2010). The statute further provides in part that if a shipping customer wishes to contest charges originally or subsequently billed, it "must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges." 49 U.S.C. § 13710(a)(3)(B). Plaintiffs argue that this 180-day period does not apply to actions brought in courts, only to matters before the Surface Transportation Board ("the Board'). However, the Board has stated that the 180-day rule applies to all billing errors and disputes, not simply matters before the Board. *See Nat'l Assoc. of Freight Transp. Consultants, Inc. - Petition for Declaratory Order,* 1997 WL 189658, *4 (S.T.B. April 9, 1997) (statute does not require that the shipper contest the bill before the Board); *see also Avery Dennison Corp. v. Conway Transp. Serv., Inc.*, 2006 WL 3350761, *4 (Ohio Ct. App. November 17, 2006) (a shipper loses any right to contest charges, whether before the Board, in court, or both, if it does not notify the carrier of its disagreement within 180 days of receiving the disputed bill, as required

by statute).  Accordingly, under the terms of the statute, in order to commence a court action challenging the rate paid for shipping services, the customer must contest the bill within 180 days.  *See Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Express (USA), Inc.,* 2011 WL 815209, *4 (W.D.N.Y. March 2, 2011) (any DHL customer who failed to contest a bill within 180 days may not sue)*; Cerdant,* 2010 WL 3397501, at *6 (any customer "who failed to contest a bill within 180 days lacks standing.").  Here, plaintiffs have not alleged that the United States contested any DHL bill.  Similarly, they have not alleged that they complied with the 180-day notice provision.  This failure to satisfy a necessary precondition to suit is fatal to the plaintiffs' claims.

Plaintiffs further argue that any notice period is subject to federal equitable tolling.  Equitable tolling is generally appropriate "where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period," *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002) (internal quotation marks omitted); where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, *see Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985); or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion, *see, e.g., Brown*, 287 F.3d at 60; *Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir. 1991).  When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has "acted with reasonable diligence during the time period she seeks to have tolled," and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.  *Zerilli-Edelglass v. New York City Transit*

*Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512 (2d Cir. 2002)).  Additionally, "[e]quitable tolling is only appropriate in rare and exceptional circumstances . . . ." *Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 112 (2d Cir. 2008).

Here, plaintiffs argue that any time limitations should be equitably tolled because DHL did not reveal whether it shipped packages by ground or air and thus the government could not determine whether it had been improperly charged the jet fuel surcharge for packages transported by ground.  Defendants contend that the government had adequate information in the Rate Guide to investigate and question any billing practices or contest any charges.  DHL's waybills, both Ground and Next Day/2nd Day, provided that the carrier reserved the right to ship packages by any means available, including air or ground transportation.  Under the circumstances, there is no equitable basis upon which to toll the 180-day notice period, as the government could simply have asked, at any time, for a clarification or explanation of defendants' fuel surcharge policy.  Accordingly, the court finds that the doctrine of equitable tolling does not apply to these claims.

Finally, plaintiffs contend that their attorney wrote to DHL and contested the allegedly improper jet fuel surcharges on behalf of another client, Jim Ball Pontiac-Buick-GMC, Inc., and a putative class of all other similarly situated United States customers of DHL.  In a letter dated October 10, 2008, counsel for plaintiffs wrote to Jon E. Olin, Esq., Senior Vice President, Secretary, and General Counsel for DHL, to notify DHL that Jim Ball Pontiac-Buick-GMC, Inc. was being improperly assessed jet fuel surcharges on Next Day and 2nd Day  deliveries that were transported solely by

ground transportation (Item 42, Exh. A). The court notes that this letter was sent nearly six months after the complaint was filed on April 18, 2008 (Item 1). Even if the court were to find that the letter, written on behalf of a stranger to this litigation, provided notice to the defendants of the United States government's intention to contest certain charges, plaintiffs failed to contest the fuel surcharges prior to commencing this action and thus failed to satisfy the precondition to suit. Additionally, the letter does not provide timely notice as to those instances of alleged improper fuel surcharges in the complaint.[1] As the plaintiffs have not established their compliance with the statutory 180-day notice provision, they have failed to satisfy a necessary precondition to suit, and the complaint is dismissed.

## CONCLUSION

The defendants' motion to dismiss is granted, and the complaint is dismissed. The Clerk is directed to enter judgment accordingly.

So ordered.

_____
JOHN T. CURTIN
United States District Judge

Dated:              , 2012
p:\pending\2008\08-301.aug912

---

[1] Counting back 180 days from October 10, 2008, plaintiffs' letter would purportedly provide notice as to only those claims that were invoiced on or after April 13, 2008. The examples in the complaint date from February and March 2008.