UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE UNITED STATES OF AMERICA *ex rel.*
KEVIN GRUPP and ROBERT MOLL,

                              Plaintiffs,

          -vs-                                          08-CV-301C

DHL EXPRESS (USA), INC.,
DHL WORLDWIDE EXPRESS, INC., and
DPWN HOLDINGS (USA), INC. (f/k/a
DHL HOLDINGS (USA), INC.)

                              Defendants.

_____

APPEARANCES:               HODGSON RUSS LLP (DANIEL C. OLIVERIO,
                           ESQ., JOHN L. SINATRA, ESQ., and REETUPARNA
                           DUTTA, ESQ., OF COUNSEL), Buffalo, New York,
                           Attorneys for Plaintiffs.

                           CONNORS & VILARDO, LLP (TERRENCE M.
                           CONNORS, ESQ., LAWRENCE J. VILARDO, ESQ.,
                           and PAUL A. WOODARD, ESQ., OF COUNSEL),
                           Buffalo, New York, Attorneys for Defendants.

## BACKGROUND

This is a *qui tam* action brought by the relators on behalf of the United States for

alleged violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*  Relators

assert that the defendants have violated the FCA by improperly billing the United States

for jet fuel surcharges on deliveries that traveled solely by ground transportation.

Specifically, relators allege that the defendants "falsely and fraudulently misrepresented

that certain Next Day and 2nd Day shipments were delivered by air such that jet fuel

surcharges were necessary, when, in fact, they were delivered solely by ground

transportation . . . ." (Item 25, ¶ 2).  Additionally, relators allege the defendants imposed

diesel fuel surcharges on ground delivery shipments when "only a small portion of those

surcharge amounts was passed along to DHL's independent contractor network of

trucking companies who bought the relevant fuel."  *Id.,* ¶ 3.

      The case was originally assigned to Chief United States District Judge

William M. Skretny.  In a Notice of Election filed March 24, 2011, the Government

declined to intervene in the action (Item 21).  On July 15, 2011, the relators filed a

notice of their intention to proceed with the action in light of the Government's election

not to intervene (Item 24) and additionally filed an amended complaint (Item 25).  On

November 8, 2011, the defendants filed a motion to dismiss (Item 36), raising several

grounds for dismissal.  Thereafter, on March 16, 2012, the case was transferred to the

docket of the undersigned (Item 47).

      In a Decision and Order filed September 14, 2012, this court granted the

defendants' motion and dismissed the complaint (Item 50).  That decision was based

solely on defendants' argument that the relators had failed to satisfy the statutory notice

requirement imposed by 49 U.S.C. § 13710(a)(3)(B).  That statute requires a shipper, in

a proceeding before the Surface Transportation Board, to contest a bill within 180 days

of its receipt, as a precondition to suit.  Upon appeal to the Second Circuit, that court

agreed with the relators that the 180-day rule did not apply in a *qui tam* action under the

FCA.  The Court of Appeals vacated the judgement for defendants and remanded the

matter to this court (Item 56).

      As neither this court nor the Second Circuit addressed the defendants' remaining

grounds for dismissal, this court issued an order directing the filing of additional

submissions in support of and opposition to the motion to dismiss (Items 60, 62-64).
The court has determined that oral argument is unnecessary.  For the reasons that
follow, the defendants' motion to dismiss is granted.

**FACTS**

According to the amended complaint (Item 25, ¶ 20), defendants, collectively
referred to as "DHL," are a shipping company that transports packages for a fee.[1]  DHL
provided delivery services to the United States government, through the General
Services Administration ("GSA"), the Department of Homeland Security, and the
Department of Defense.  *Id., ¶* 25.  At all times relevant to the complaint, relators were
the owners and operators of MVP Delivery and Logistics, Inc., ("MVP"), a trucking
company located in Depew, New York, and an independent contractor to DHL.  *Id.*, ¶ 9.
Relators allege that, beginning in or about 2003 or 2004, DHL began to assess a jet
fuel surcharge on its "Next Day" and  "2nd Day" delivery service, regardless of whether
the package traveled by air or ground.  *Id., ¶* 29.  Relators further allege that a
"substantial percentage of DHL Next Day and 2d Day shipments paid for by the United
States government *did not* travel by air at all, even though they included a jet fuel
surcharge."  *Id., ¶* 32.  Additionally, beginning in 2003 or 2004, DHL began charging a
diesel fuel surcharge notwithstanding the fact that it contracted out 65% to 70% of its
ground delivery service.  *Id., ¶* 40.  Relators allege that DHL "shared only a small
portion of fuel surcharges with its independent contractors."  *Id., ¶* 42.  At all times

---

[1]Defendant DHL Worldwide Express, Inc. no longer exists.  For purposes of the motion, all
defendants are referred to collectively herein as "DHL."

relevant to the complaint, the jet fuel surcharge has been substantially higher than the ground fuel surcharge. *Id.,* ¶ 38.

Relators offered three specific examples of the alleged improper jet fuel surcharges. Waybill #61662929845 represents a March 2008 Next Day shipment from Washington, D.C. to Lorton, Virginia which traveled solely by ground transportation through DHL's truck hub in Allentown, Pennsylvania. Waybill #75371715440 represents a March 2008 Next Day shipment from Buffalo, New York to Cleveland, Ohio which traveled by ground transportation through DHL's truck hub in Erie, Pennsylvania. Waybill #65415662141 represents a February 2008 Next Day shipment from Alameda, California to Walnut Creek, California which traveled solely by ground transportation through DHL's truck hub in Fresno, California. Relators allege that in each of these instances, the government was improperly assessed a jet fuel surcharge (Item 25, ¶ 36).

In support of their motion to dismiss, defendants submitted DHL's 2008 "Standard Rate Guide" (Item 36, Exh. B), a copy of DHL's Ground Delivery Service Waybill (Item 36, Exh. C), DHL's 2008 Fuel Surcharge Tables (Item 36, Exh. D), and a copy of DHL's Next Day and 2nd Day Delivery Waybill (Item 36, Exh. E).

DHL's 2008 Rate Guide provides information regarding DHL's various shipping services (Item 36, Exh. B). On Page 2 of the Rate Guide, "U.S. Domestic Shipping" services are noted to include DHL Same Day, DHL Next Day: 10:30, 12:00 PM and 3:00 PM, DHL 2nd Day, DHL Ground, DHL Shipready, and DHL Smartmail. Each of the "Domestic Services" are further described on Page 4 of the Rate Guide. For example, "DHL Next Day 10:30 AM" is described as providing "[g]uaranteed delivery by 10:30

4

a.m. the next business day." "DHL Ground" provides "[d]oor-to-door delivery throughout

the U.S. . . . in 1-6 business days." This method of shipment is said to offer "increased

savings without decreased service features. We guarantee your packages receive the

same attention and careful handling that you value with our Air Express services,

including tracking and delivery details."

The Rate Table for DHL Ground delivery service on page 14 of the Rate Guide

contains a description of DHL Ground service and a guarantee "that your packages

receive the same attention and careful handling that you value with our express

services, including tracking and delivery details." On Page 35 of the Rate Guide,

entitled "FEES," DHL advises its customers that "Air Express shipments are assessed a

fuel surcharge which is indexed to the USGC kerosene-type jet fuel index. Ground

shipments are assessed a fuel surcharge which is indexed to the U.S. Dept. Of

Energy's on-highway diesel fuel index." Customers are directed to DHL's "Fuel

Surcharge Table" for further details.

On Page 37 of the Rate Guide, DHL domestic shipping services are categorized

as either "Same Day," "Time Definite," or "Day Definite." "DHL Ground," a "Day

Definite" delivery service, is described as a way to "[s]ave money on your routine

shipments with guaranteed door-to-door delivery in 1 to 6 business days, depending on

the origin and destination of your shipment."

DHL's fuel surcharge terms are described in a document entitled "DHL Express

Fuel Surcharge Information" (Item 36, Exh. D). According to this document, "DHL

utilizes an indexed fuel surcharge based upon the fuel prices published monthly by the

U.S. Department of Energy." *Id.* The "Air Express and International indexed surcharge

calculation is linked to the monthly rounded average of the U.S. Gulf Coast (USGC) price" for kerosene-type jet fuel, while the "Ground Delivery Service indexed surcharge calculation is linked to the monthly rounded average" of the national price for diesel fuel. *Id.* There are two fuel surcharge tables, one for "DHL Air Express Services" and the other for "DHL Ground Delivery Service."

DHL used distinct waybills for "Ground Delivery Service" and for "Next Day" and "2nd Day" shipments. Both waybills provided that DHL reserved the right to transport packages by any means including air, road, or any other carrier (Item 36, Exhs. C, E).

## DISCUSSION

At the outset, the relators argue that in vacating the judgment and remanding the case to this court, the Second Circuit impliedly rejected the defendants' alternative arguments in support of their motion to dismiss. On the contrary, the Second Circuit explicitly stated that the judgment in favor of DHL was vacated "on the ground that the 180-day rule cannot apply to a *qui tam* action under the FCA." *United States ex rel. Grupp v. DHL Express (USA), Inc.,* 742 F.3d 51, 53 (2d Cir. 2014). Accordingly, this court will address the defendants' remaining arguments: (1) that relators have failed to state a plausible claim for relief under the FCA, and (2) that the claims are partially time-barred.

## 1.  Motion to Dismiss for Failure to State a Plausible Claim for Relief

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court should "draw all reasonable inferences in Plaintiff['s] favor,

assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  To state a claim for relief, "a plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must allege " 'enough facts to state a claim to relief that is plausible on its face.' " *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a plaintiff alleges fraud, the factual allegations must meet the higher pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure.  *See U.S. ex rel. Moore v. GlaxoSmithKline, LLC*, 2013 WL 6085125, *3 (E.D.N.Y. Oct. 18, 2013) ("The Second Circuit has held that the FCA is an 'anti-fraud statute,' and therefore claims brought under the FCA 'fall within the express scope of Rule 9(b)' of the Federal Rules of Civil Procedure.")  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed.R.Civ.P. 9(b).  To be fraudulent, a false statement must have been made with the requisite scienter, and thus the complaint must "plead the factual basis

7

which gives rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).  "In sum, to state a fraud claim, the plaintiff must make particular factual allegations supporting a reasonable inference that the defendants are liable for fraud, and allegations that strongly support an inference that the defendants acted with intent to defraud." *Williams v. GMAC Mortg., Inc.,* 2014 WL 2560605, *3 (S.D.N.Y. June 6, 2014).  A court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal,* 556 U.S. at 678)).

Additionally, In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

8

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented, to [the United States government] a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a). To plead a violation of the FCA, the plaintiff "must show that defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001). "Knowing" and "knowingly" are defined as meaning that the person (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. §3729(b). Here, the relators allege that DHL knowingly and falsely represented that Next Day and 2nd Day shipments were transported by air; that jet fuel surcharges were properly imposed on Next Day and 2nd Day shipments; and that diesel fuel surcharges were necessary to compensate DHL for ground shipments. Item 25, ¶ 48.

Defendants did not falsely represent that all Next Day and 2nd Day shipments were transported by air. The relevant waybills expressly advise DHL customers that DHL reserved the right to transport Next Day and 2nd Day packages by any means of transportation, not specifically by air. Additionally, nowhere in the contract documents does DHL represent that diesel fuel surcharge amounts were necessary to compensate DHL and would be passed along to its independent contractor network of trucking companies. The only possible misrepresentation relators have plausibly alleged is their claim that DHL fraudulently imposed jet fuel surcharges on Next Day and 2nd Day

shipments that did not travel by air.

Defendants argue that the contract documents clearly permit the imposition of jet fuel surcharges on the Next Day and 2nd Day shipments at issue, and thus relators have failed to allege a false claim.  The Rate Guide states that a jet fuel surcharge is imposed on all "Air Express" shipments.  Although "Air Express" is not explicitly defined, defendants argue that it refers to a category of service, not a mode of transportation, and thus impliedly includes Next Day and 2nd Day packages.[2]  Defendants argue that their computation of the fuel surcharges, as contemplated by the contract documents, is the only plausible interpretation in the business context in which customers want their packages delivered in a timely manner at a specific price, regardless of the method of transportation.  They contend that DHL must establish the cost of a shipment prior to its delivery and explicitly reserves the right to ship Next day and 2nd Day packages by any mode of transportation it deems appropriate.

Relators argue that, as the term "Air Express" is not explicitly defined in the Rate Guide, it refers to a mode of transportation, rather than a category of service.[3]  Consequently, they contend that jet fuel surcharges were only authorized on shipments transported by airplane.  Defendants counter that this reading of the contract

---

[2]  The Second Circuit appears to have accepted as true the defendants' assertion that, although it is not explicitly set out in the Rate Guide, DHL Same Day, Next Day, and 2nd Day services are "Air Express" services, as distinguished from "DHL Ground" service.  *See United States ex rel. Grupp v. DHL Express (USA), Inc.,* 742 F.3d 51, 52 (2d Cir. 2014); Rate Guide, at p. 4.

[3]  Relators argue that the Second Circuit has already determined, in *REA Express, Inc. v. C.A.B.*, 507 F.2d 42 (2d Cir. 1974), that "Air Express" refers to a mode of transportation, not a category of service. *REA* involved a decision by the Civil Aeronautics Board not to review a complaint of unfair competition regarding the name "Air Express."  The court affirmed the Board's determination that REA had failed to establish the reasonable likelihood that the unfair use of the term "Air Express" in that case caused specific and substantial public injury.  *REA* is neither relevant to nor determinative in the present case.

documents, which would require the computation of an appropriate fuel surcharge following the delivery of a package based on the mode of transportation, would create confusion and uncertainty and is simply impractical given the realties of the shipping industry.

In an unrelated case based on the same contract documents, this court determined that the term "Air Express" "can either denote a mode of transportation . . . or is used as a term of art to denote a category of services . . .."  *Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc.,* 2010 WL 1840316, *4 (W.D.N.Y. May 7, 2010).  As the contract ambiguity was not resolved through extrinsic evidence in the *Jim Ball* case, this court denied cross motions for partial summary judgment on liability.  *Id.* Similarly, the court here is presented with a contract ambiguity and two competing interpretations of the provisions at issue.  The court must determine whether the allegation of a contract ambiguity, without more, is sufficient to allege a false claim under the FCA.

When alleging fraud, a plaintiff must "specifically plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs.*, 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) (quoting *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)).  Here, relators have alleged, in a conclusory fashion, that the imposition of jet fuel surcharges on Next Day and 2d Day shipments that were transported solely by ground transportation was fraudulent (Item 25, ¶48).  However, defendant's method of rate computation is both

consistent with the contract documents and reasonable in the business context.  The relators' conclusory allegation of fraud, based solely on a disputed interpretation of the contract documents, is insufficient to "strongly support an inference that the defendants acted with intent to defraud." *Williams v. GMAC Mortg., Inc.,* 2014 WL 2560605, at *3; *see also Dash v. Seagate Technology (U.S.) Holdings, Inc.,* 2014 WL 2922658, *4 (E.D.N.Y. June 30, 2014) (conclusory statement as to defendant's fraudulent intent not sufficient to survive motion to dismiss); *Scheiner v. Wallace*, 832 F. Supp. 687, 702 (S.D.N.Y. 1993) ("Facts that are merely as consistent with fraudulent intent as they are with its absence are insufficient. Plaintiffs must allege facts that unambiguously give rise to a strong inference of fraudulent intent.").  Moreover, a conclusory allegation of conduct that is merely " 'consistent with' liability, fail[s] to satisfy both Rule 9(b) and *Twombly's* instruction that a plausible complaint 'nudge [ ] [plaintiff's] claims across the line from conceivable to plausible . . ..' " *United States ex rel Corporate Compliance Assocs. v. New York Soc. for the Relief of the Ruptured and Crippled,* 2014 WL 3905742, *17 (S.D.N.Y. Aug. 7, 2014) (citing *Twombly,* 550 U.S. at 570).

Many courts have determined, in the summary judgment context, that "[w]ithout more than a relator's subjective interpretation of an imprecise contractual provision, a defendant's reasonable interpretation of its legal obligation precludes a finding that the defendant had knowledge of its falsity." *U.S. ex rel. Thomas v. Siemens AG,* 991 F. Supp. 2d 540, 568 (E.D. Pa. 2014); *see also U.S. Dep't of Transp. ex rel. Arnold v. CMC Engineering,* 2014 WL 2442945, *3 (3rd Cir. June 2, 2014) (as a result of contract ambiguity, court found no evidence from which a reasonable jury could find that

defendant "knowingly" made a factually false claim or false certification as defined

under the FCA); *cf. U.S. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d

980, 984 (D.C.Cir. 2008) (holding that, where relator and defendant "simply disagree

about how to interpret ambiguous contract language" and relator could not point to

anything that might have dissuaded defendant from its interpretation, "there is no

genuine issue as to whether [the defendant] knowingly presented false claims"); *United

States v. Basin Elec. Power Coop.*, 248 F.3d 781, 805 (8th Cir. 2001) (holding relator

had failed to state a claim under the FCA where the defendant's "interpretation and

performance under the contract was reasonable" and the relator thus "did not prove that

[the defendant] acted with the requisite knowledge"); *United States ex rel. Lamers v.

City of Green Bay,* 168 F.3d 1013, 1018 (7th Cir. 1999) ("[I]mprecise statements or

differences in interpretation growing out of a disputed legal question are similarly not

false under the FCA."); *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477

(9th Cir. 1996).  Similarly, upon a motion to amend the complaint to add a claim under

the FCA, the Fourth Circuit found proposed FCA claims involving general and vague

contract provisions did not constitute false statements under the FCA.

> While the phrase "false or fraudulent claim" in the False Claims Act should
> be construed broadly, it just as surely cannot be construed to include a
> run-of-the-mill breach of contract action that is devoid of any objective
> falsehood.  An FCA relator cannot base a fraud claim on nothing more
> than his own interpretation of an imprecise contractual provision.  To hold
> otherwise would render meaningless the fundamental distinction between
> actions for fraud and breach of contract.

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 378 (4th Cir. 2008)

(internal citations and quotes omitted).  Here, a commonsense reading of the pertinent

documents -  the Rate Guide, waybills, and Fuel Surcharge Tables - would apprise DHL customers that jet fuel surcharges would be imposed on "Air Express" shipments, which include Next Day and 2nd Day shipments.  Relators' alternate interpretation of the documents falls far short of the FCA's requirement that the relator allege the "factual basis which gives rise to a strong inference of fraudulent intent."  *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994); *see also U.S. ex rel. K & R Ltd. P'ship*, 530 F.3d at 984 (parties' disagreement "about how to interpret ambiguous contract language" does not give rise to factual issue that defendant knowingly presented false claims).  This disagreement regarding the proper imposition of jet fuel surcharges raises, at best, a possible claim of breach of contract which only the government could, and has chosen not to, assert.

Although "[c]omplaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend …," *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 9.03 at 9–34 (2d ed. 1986)), the decision to allow an amendment rests in the discretion of the court.  Relators have already amended the complaint once to add specific examples of the alleged false claims.  On this motion, the court has determined that the complaint is deficient, not for a lack of specificity but because the alleged fraudulent scheme does not state a claim under the FCA.  Thus, the court fails to see how an amendment would address the shortcomings of the FCA cause of action.  The specifics of the alleged fraudulent scheme are fully included in the complaint and all pertinent contract documents have been incorporated by reference and considered by the court.  No additional detail will transform this contract ambiguity into a fraud claim.  Accordingly, the motion to dismiss

14

is granted and the complaint is dismissed with prejudice.

## 2.  Statute of Limitations

In the interest of thoroughness, the court will address defendants' alternative argument that relators' claims that predate September 9, 2005 must be dismissed as time-barred.  The FCA applies a six-year statute of limitations precluding relator claims filed "more than 6 years after the date on which the violation of [the FCA] is committed." *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 267 (2d Cir. 2006) (quoting 31 U.S.C. § 3731(b)(1)).  The FCA's six-year statute of limitations begins to run " 'on the date the claim is made, or, if the claim is paid, on the date of payment.' "  *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993) (quoting *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 829 (S.D.N.Y. 1986), *aff'd*, 817 F.2d 1007 (2d Cir. 1987)).

This action was commenced on April 18, 2008, with the filing of the complaint under seal (Item 1).  After the government declined to intervene, the relators served an amended complaint on September 9, 2011 (Item 25).  Citing *Baylor, supra*, defendants argue that the amended complaint does not relate back to the date of the filing of the original complaint and that any claims prior to September 9, 2005, six years prior to the date of the filing of the amended complaint, must be dismissed.

In *Baylor,* the court determined that the Government's complaint-in-intervention did not relate back to the original *qui tam* complaint filed under seal.  Section 3731(c) of the FCA was then amended to provide that any pleading by the Government, whether an amendment or a complaint-in-intervention, relates back to the original *qui tam*

15

complaint, to the extent that it arises out of the same conduct, transactions, or occurrences set forth in the original complaint.  31 U.S.C. § 3731(c).  Neither *Baylor* nor section 3731(c) applies to the original *qui tam* complaint in this case.

Here, the case was commenced with the filing of the original complaint in a timely fashion, the Government chose not to intervene, and the original sealed complaint tolled the applicable statute of limitations.  *See Hayes v. Dep't of Educ. of City of New York,* 2014 WL 2048196, *5 (S.D.N.Y. May 16, 2014).  The amended complaint is substantially the same as the original complaint, with some added factual details. Thus, the allegations of the amended complaint are timely, as "no claim actually pleaded in the Amended Complaint would be time-barred, if timely when the original sealed complaint was filed." *Hayes,* 2014 WL 2048196, at *6.  Accordingly, if the court had not dismissed the complaint for failure to plead a plausible claim for relief under the FCA, this aspect of the defendant's motion would be denied.

## CONCLUSION

The defendants' motion to dismiss (Item 36) is granted, and the complaint is dismissed with prejudice.  The Clerk is directed to enter judgment accordingly.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: September 10, 2014