

14-3595-cv
*Grupp v. DHL*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand fifteen.

Present:
> GUIDO CALABRESI,
> PETER W. HALL,
> DEBRA ANN LIVINGSTON,
>> *Circuit Judge*s.

_____

KEVIN GRUPP, ROBERT MOLL,

> *Plaintiffs-Appellants*,

UNITED STATES OF AMERICA, *ex rel.*,

> *Plaintiff*,

> v.                                                                          No. 14-3595-cv

DHL WORLDWIDE EXPRESS, INCORPORATED, DHL EXPRESS (USA), INC., DHL HOLDINGS (USA), INC.,

> *Defendants-Appellees*.

_____

1

MANDATE ISSUED ON 05/20/2015

| | |
|---|---|
| For Appellants: | JOHN L. SINATRA, JR., Daniel C. Oliverio, and Reetuparna Dutta, Hodgson Russ LLP, Buffalo, New York. |
| For Appellees: | LAWRENCE J. VILARDO, Terrence M. Connors, and Paul A. Woodard, Connors & Vilardo, LLP, Buffalo, New York. |

Appeal from a judgment of the United States District Court for the Western District of New York (Curtin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants, as relators in this *qui tam* action alleging violations of the False Claims Act ("FCA"), appeal from a final judgment entered in favor of Defendants-Appellees ("DHL") by the United States District Court for the Western District of New York. We assume the parties' familiarity with the underlying facts, the procedural history, the district court's ruling, and the arguments presented on appeal.

We review the dismissal of a complaint for failure to state a claim *de novo*, and affirm "only if there are no legal grounds upon which relief may be granted." *Virgilio v. City of New York*, 407 F.3d 105, 111 (2d Cir. 2005). In so doing, "we draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). To survive a Rule 12(b)(6) motion, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal

2

quotation marks omitted). FCA claims must comply with the heightened pleading standard for fraud claims imposed by Rule 9(b) of the Federal Rules of Civil Procedure. *See Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476–77 (2d Cir. 1995). Plaintiffs' complaint must therefore "state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Finally, our review of Rule 12(b)(6) motions is not limited to the complaint. We may also consider "documents incorporated into the complaint by reference, . . . matters of which the court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and documents that are "integral to the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted). In this case, we accept the parties' invitation to review various contract documents, including DHL's standard rate guide ("guide"), DHL waybills, and DHL's indexed fuel surcharge sheet.

The crux of plaintiffs' claim is that by charging Government clients jet fuel surcharges to ship packages that did not ultimately travel by air, DHL knowingly defrauded the Government in violation of the FCA, 31 U.S.C. § 3729(a)(1). While the concept of charging a jet fuel surcharge to deliver a package that will never see the inside of an airplane may seem curious, in this instance, such a practice is entirely consistent with the contract documents and the logistical requirements associated with operating a company such as DHL. In order for plaintiffs' claim to hold water, the contract documents must support the assertion that the term "Air Express" refers to—or may reasonably be interpreted as referring to—a mode of transportation, as opposed to a category of services. The guide lists the various domestic services DHL offers, which include three: "DHL NEXT DAY" services, "DHL 2ND DAY," and "DHL GROUND." J.A. 64. The distinguishing characteristic among these services is the day and time of delivery; the guide

3

makes no mention of the means by which packages shipped using each service are transported. The brief description of DHL GROUND states: "We guarantee your packages receive the same attention and careful handling that you value with our Air Express services." *Id.* By setting DHL GROUND apart from "Air Express services," the guide implicitly recognizes two different categories of service. Although the NEXT DAY and 2ND DAY services are not explicitly placed under the umbrella category of "Air Express services," the contract documents support no other reasonable conclusion. For instance, elsewhere in the guide DHL outlines the procedure for determining domestic rates. First, customers are instructed to select a service from among five options: NEXT DAY 10:30 AM, NEXT DAY 12:00 PM, NEXT DAY 3:00 PM, 2ND DAY, and GROUND. Customers are then provided with two formulas for determining the weight and size of a shipment, one for "U.S. air express shipments" and another for "U.S. ground shipments." J.A. 67. The binary categorization of DHL's services is further enforced in the introductory sentence of the guide's "FEES" section, which states: "Except where noted, fees are applicable to all services—Domestic and International, *Ground and Air Express*—with the exception of DHL SAME DAY, DHL Global Forwarding, DHL GlobalMail™, and DHL Solutions." J.A. 95 (emphasis added). Finally, we consider the "Fuel Surcharge" provision at the center of this case, which provides:

> Air Express shipments are assessed a fuel surcharge which is indexed to the USGC kerosene-type jet fuel index.
> Ground shipments are assessed a fuel surcharge which is indexed to the U.S. Dept. of Energy's on-highway diesel fuel index. For details go to Fuel Surcharge Table and see Current Indexed Fuel Surcharge.

*Id.* It is significant that the surcharges are not imposed based on the type of fuel used to deliver a package (i.e., "jet fuel surcharge" vs. "diesel fuel surcharge")—which could arguably support an inference that the mode of transportation determines which surcharge applies in a given

4

situation—but on the category of service contracted for (i.e., Air Express shipments fuel surcharge vs. Ground shipments fuel surcharge). The referenced "Current Indexed Fuel Surcharge" sheet provides detailed information about the surcharges, again referencing them as applying disjunctively to the plural "DHL Air Express *Services*," and "DHL Ground Delivery Service." J.A. 107 (emphasis added).

The only reasonable interpretation of the contract materials is that "Air Express" is a category of service that encompasses NEXT DAY and 2ND DAY services, and that packages shipped using any of the Air Express services are subject to a surcharge that is tied to the average price of jet fuel, regardless of whether any jet fuel is used in the delivery of a specific package. None of DHL's services or related fees is cast in terms of *how* items are transported, but only *how quickly* items are delivered. Even if the guide did create some confusion on this point, DHL's waybills explicitly state that DHL GROUND packages may be carried by air, and conversely, that DHL NEXT DAY and 2ND DAY packages may be carried by road, thereby eviscerating any argument that each service is tied to a particular mode of transportation, and that DHL customers will only be charged for the type of fuel actually used to deliver their package.

Because plaintiffs have failed to allege a claim for fraud—let alone fraud executed with the requisite scienter to be actionable under the FCA—the district court properly dismissed the First Amended Complaint.

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit